1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7   LINDA DOLAN,                          Case No.  14-cv-05514-JST

              Plaintiff,
8                                         **ORDER GRANTING PLAINTIFF'S**
                                          **MOTION FOR SUMMARY JUDGMENT**
9       v.                                **IN PART, DENYING DEFENDANT'S**
                                          **MOTION FOR SUMMARY**
10  CAROLYN W. COLVIN,                     **JUDGMENT, AND REMANDING FOR**
                                          **ADDITIONAL PROCEEDINGS**
              Defendant.
11                                         Re: ECF Nos. 10, 11
12

13        In this Social Security action, Plaintiff Linda Dolan appeals a final decision of Defendant

14  Commissioner Carolyn W. Colvin denying her application for disability insurance benefits.

15  Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 10, 11.  The

16  matter is deemed fully briefed and submitted without oral argument pursuant to Civil Local Rule

17  16-5.

18        Upon consideration of the moving papers, and for the reasons set forth below, Plaintiff's

19  motion for summary judgment is granted in part; Defendant's motion for summary judgment is

20  denied; and the case is remanded for further proceedings.

21  **I.      BACKGROUND**

22        **A.      Factual and Procedural History**

23        Plaintiff Linda Dolan claims disability beginning on February 8, 2008.  Administrative

24  Record ("AR") 156.  Dolan is a sixty-two-year-old woman who was last employed as a manager

25  of secretaries, receptionists, and word processors at a law firm.  AR 42, 160.  Dolan indicated that

26  she worked forty hours per week, and that her responsibilities included managing, recruiting,

27  hiring, and training support staff.  AR 186.  She also wrote and delivered performance evaluations;

28  provided status reports; and regularly communicated with staff and management in person and by

United States District Court
Northern District of California

email.  AR 196.  She left work in February 2008 due to chronic pain in the neck, shoulders, arms, wrists, and hands, as well as headaches.  AR 169.

Dolan was treated and evaluated by numerous physicians and health care providers, including Dr. J. Timothy Murphy, AR 439-647, 687-91, 710-718; Dr. Holly Kelly, AR 345-417, 428-33, 681-85, 698-709; Dr. Brian Andrews, AR 258-64; occupational therapist Lynn Milgrom, AR 663-79; Dr. Calvin Pon, AR 571-73; Dr. Kevin Barrows, AR 719-729; Dr. Scott Werden, AR 398-401; Novato Community Hospital, AR 270-301; and UCSF Medical Center, AR 308-42.  In addition, state agency reviewing physicians Dr. H. Jone and Dr. D. Pong and medical consultant Dr. Leah Holly reviewed Dolan's medical records.  AR 73-93, 655-56.  These physicians and providers reached conflicting conclusions regarding Dolan's capabilities.  See AR 18-20.  For example, Dr. Holly, Dolan's treating orthopedist, determined in October 2009 that she is "unable to do long periods of sitting in one position, long periods of upper body motion, long periods of overhead activities meaning anything greater than 10-15 minutes, tends to create significant pain flares."  AR 358.  By contrast, in April of that same year, consultative orthopedic disability examiner Dr. Pon determined that she "should be able to sit for a total of six hours during an eight-hour work day."  AR 573.

Dolan filed her application for disability benefits under Title II of the Social Security Act around August 8, 2011.  AR 156.  Her claim was denied by the Social Security Administration on October 31, 2011, and denied again upon reconsideration on June 11, 2012.  AR 73-83, 84-94.  An administrative law judge ("ALJ") heard Dolan's case on May 21, 2013, and issued a decision on June 21, 2013, finding that Dolan was not disabled within the meaning of the Social Security Act.  AR 10-22.  The ALJ evaluated Dolan's claim using the five-step sequential evaluation process for disability required under the Code of Federal Regulations:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her

> past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005); <u>see</u> 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Dolan had not engaged in substantial gainful activity since February 8, 2008.  AR 12.  At step two, she found that Dolan has the following severe impairments: degenerative disc disease of the cervical spine with radicular pain and headaches, and arthritis of the hands.  <u>Id</u>.  At step three, the ALJ concluded that Dolan does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1, and therefore proceeded to step four.  AR 14.  The ALJ then found that Dolan has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except that she can frequently climb ramps and stairs.  AR 14.  The ALJ concluded that she can never climb ladders, ropes, or scaffolds; she can frequently balance, stoop, kneel, crouch, and crawl; and she is limited to occasional reaching with the right upper extremity, and frequent handling and fingering bilaterally.  AR 14-15.  At step four, the ALJ found that Dolan is capable of performing her past relevant work as an office manager.  AR 20-21.  In the alternative, the ALJ proceeded to step five and found that other jobs exist in the national economy that Dolan is also able to perform.  AR 21.  Based on these findings, the ALJ concluded that Dolan is not disabled.  AR 22.

In reaching these conclusions, the ALJ found that although Dolan's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  AR 17.  She found the statements of Dolan's partner unpersuasive because they "generally echo[ed] those of the claimant."  AR 18.  As for the opinion evidence, the ALJ gave significant weight to the opinions of agency reviewing physicians Dr. H. Jone, Dr. D. Pong, and Dr. Leah Holly, but gave little weight to the opinions of Dr. Holly Kelly, Dolan's orthopedist; Dr. Kevin Barrows, Dolan's pain management physician; Dr. J. Timothy Murphy, Dolan's primary care physician; evaluating physicians Dr. Calvin Pon and Dr. Tracy Newkirk; and

United States District Court
Northern District of California

1  occupational therapist Lynn Milgrom.  AR 18-20.  The ALJ also relied on the testimony of

2  vocational expert Kenneth Ferra.  AR 20-22, 55-60, 64-69.

3          The Appeals Council of the Social Security Administration denied review of the ALJ's

4  decision on October 29, 2014.  AR 1.  Dolan subsequently filed this action seeking review of the

5  denial of benefits.  ECF No. 1.

6          **B.     Jurisdiction**

7          The Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

8  U.S.C. section 405(g).

9          **C.     Legal Standard**

10          The Court may set aside a denial of benefits only if it is "not supported by substantial

11  evidence in the record or if it is based on legal error."  Merrill ex rel. Merrill v. Apfel, 224 F.3d

12  1083, 1084-85 (9th Cir. 2000).  "Substantial evidence is relevant evidence which, considering the

13  record as a whole, a reasonable person might accept as adequate to support a conclusion."  Id. at

14  1085.  It is "more than a scintilla but less than a preponderance."  Thomas v. Barnhart, 278 F.3d

15  947, 954 (9th Cir. 2002).  The Court "review[s] the administrative record in its entirety to decide

16  whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports

17  and evidence that detracts from the ALJ's determination."  Drouin v. Sullivan, 966 F.2d 1255,

18  1257 (9th Cir. 1992).  "Where evidence exists to support more than one rational interpretation, the

19  Court must defer to the decision of the ALJ."  Id. at 1258.  The ALJ is responsible for making

20  determinations of credibility, resolution of conflicts in medical testimony, and resolution of all

21  other ambiguities.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

22  **II.     DISCUSSION**

23          Dolan argues that the Court should grant summary judgment in her favor because the ALJ

24  committed legal error in her assessment of Dolan's residual functional capacity by: (1) failing to

25  properly assess Dolan's credibility; (2) failing to properly consider the opinion evidence;

26  (3) failing to properly evaluate testimony from lay witnesses; and (4) failing to include all relevant

27  limitations in the hypothetical posed to the vocational expert.  ECF No. 10 at 4.  She also argues

28  that (5) the ALJ's findings are not supported by substantial evidence because she rejected all of the

United States District Court
Northern District of California

4

testimony and opinion evidence of record.  Id.

## A.    Credibility Determination

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).[1]  "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "[G]eneral findings are an insufficient basis to support an adverse credibility determination."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  Rather, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Id.  The ALJ's credibility finding must be properly supported by the record and sufficiently specific to assure a reviewing court that the ALJ did not arbitrarily reject the claimant's subjective testimony regarding pain.  Bunnell, 947 F.2d at 345-46.

Here, the ALJ found that Dolan's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found her statements concerning the intensity, persistence and limiting effects of these symptoms "not entirely credible" for the following reasons:

> The claimant testified that her radiating neck pain prevents her from working because she has trouble using her arms and keeping her neck in a straight position, she cannot sit or stand for extended periods, she has frequent debilitating headaches, and she experiences unpredictable symptom flares that cause her to cease all

---

[1] The Commissioner's suggestion that a lesser standard should apply, "[i]rrespective of" the relevant Ninth Circuit law, ECF No. 11 at 7 & n.1, "lacks any support in precedent and must be rejected."  Garrison, 759 F.3d at 1015 n. 18; see also Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).

United States District Court
Northern District of California

activities for up to a week. The objective evidence, however, does not fully support the claimant's statements. Physical examinations have frequently revealed tenderness and a reduced range of motion in the cervical region, and tenderness in the occiput and the muscles of the bilateral shoulders, but have otherwise been largely normal. The claimant has intermittently, particularly during periods of acute pain flares, demonstrated sensory disturbances in her upper extremities and a slightly reduced range of motion in her shoulders, but more often, she displays normal neurological functioning and a full range of motion in the shoulders [Exs. 1F at 7-8; 2F at 6-7, 9-10; 3F at 9-11, 13, 17-21, 25-33, 40; 4F at 3-8, 11-15, 18-34, 36, 42-44; 6F at 3-6; 7F at 9-11, 17-20, 26-27, 41, 120, 130, 132-135, 138-40; 11F; 16F at 1-12; 17F at 6-9; 18F at 6, 8]. In addition, while the claimant has received regular treatment for her pain, since her 2008 surgery, this treatment has been quite conservative. She has repeatedly told doctors that she is interested in obtaining the most conservative treatment she can, and although she has received several rounds of trigger point injections, she has rejected other types of treatment. For example, in November 2009, she indicated that Botox injections had significantly reduced her pain, but declined another injection despite her own observation that her functional abilities had declined once the effects of the injection wore off. Likewise, in May 2009, she stated that a cervical epidural steroid injection had helped her pain, but has refused subsequent injections [Exs. 4F at 8, 14-15, 24-27; 6F at 3-4; 7F at 9, 120; 16F at 7-8]. Further, the evidence suggests that even the claimant's conservative treatment has improved her symptoms. She did not see her orthopedist at all from September 2010 until August 2011, when she returned stating that her pain had been well controlled until a recent yoga retreat [Ex. 4F at 5-6]. Similarly, since March 2012, she has complained of only sporadic pain flares, occurring approximately every three to four months [Ex. 16F at 1-12]. Finally, despite her pain, the claimant is able to care for her personal needs, drive, go grocery shopping, do some light chores around the house, and hike [Hearing Testimony; Ex. 5E]. She does yoga and other forms of exercise on a regular basis, attends a fulltime graduate school program for psychology, and has apparently done some work with patients through that program [Exs. 3F at 9, 30-31; 4F at 5-6, 18; 6F at 5-6; 7F at 11; 17F at 6-9; 18F at 1, 3-4]. Although the claimant does have some pain associated with her neck impairment, the objective findings contained in the record, the treatment she has received, and her ability to engage in a wide range of daily activities, all suggests that this pain is not as severe as she claims.

AR 17. Dolan claims that each of the ALJ's three stated reasons for discrediting her testimony is either unsupported in the record or legally deficient. ECF No. 10 at 18.

### 1. Objective Evidence in the Record

Conflicts between a claimant's subjective complaints and the objective medical evidence can be a factor in weighing a claimant's credibility, but the ALJ "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the

1    claimant is not supported by objective medical evidence." <u>Bunnell</u>, 947 F.2d at 346-47; <u>Burch</u>,

2    400 F.3d at 681; <u>see also</u> <u>Gonzalez v. Sullivan</u>, 914 F. 2d 1197, 1201 (9th Cir. 1990) ("it is the

3    very nature of excess pain to be out of proportion to the medical evidence"); 20 C.F.R.

4    § 404.1529(c)(2) ("we will not reject your statements about the intensity and persistence of your

5    pain or other symptoms or about the effect your symptoms have on your ability to work solely

6    because the available objective medical evidence does not substantiate your statements").

7           Here, the ALJ found that Dolan's complaints concerning radiating neck pain, her inability

8    to sit or stand for extended periods, debilitating headaches, and unpredictable symptom flares were

9    not fully supported by the objective evidence.  AR 17.  She noted that physical examinations have

10   frequently revealed reduced range of motion in the neck, as well as tenderness in the head, neck,

11   and shoulders, and intermittent "sensory disturbances in her upper extremities and a slightly

12   reduced range of motion in her shoulders," particularly during periods of acute pain flares.  <u>Id.</u>

13   She stated that Dolan's examinations have otherwise been "largely normal."  <u>Id.</u>  But the ALJ did

14   not explain why these objective medical findings are inconsistent with or otherwise undermine or

15   discredit Dolan's descriptions of her limitations, or specifically identify which of Dolan's claimed

16   restrictions she found incredible.  <u>See</u> <u>Holohan</u>, 246 F.3d at 1208 ("[T]he ALJ must specifically

17   identify the testimony she or he finds not to be credible and must explain what evidence

18   undermines the testimony.  The evidence upon which the ALJ relies must be substantial." (internal

19   citation omitted)).  "[T]he Court expects the ALJ to not only highlight what [s]he deems to be

20   significant facts, but also to explain why [s]he finds them to be significant." <u>Holmlund v. Colvin</u>,

21   No. 12-cv-4481-EMC, 2014 WL 3965042, at *14 (N.D. Cal. Aug. 13, 2014).  The ALJ's

22   discussion of the objective medical evidence therefore did not constitute a clear and convincing

23   reason to discredit Dolan's testimony.

24                      **2.      Conservative Treatment**

25           Evidence of conservative treatment is a permissible basis to discount a claimant's

26   testimony regarding the severity of an impairment.  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039-

27   40 (9th Cir. 2008) (citing <u>Parra v. Astrue</u>, 481 F.3d 742, 750-51 (9th Cir. 2007); <u>Meanel v. Apfel</u>,

28   172 F.3d 1111, 1114 (9th Cir. 1999)).  Here, the ALJ found that while Dolan has received regular

United States District Court
Northern District of California

United States District Court
Northern District of California

1    treatment for her pain, the treatment has been quite conservative.  AR 17.  The ALJ emphasized

2    that Dolan has expressed interest in the most conservative treatment possible and that although

3    Botox injections and a cervical epidural steroid injection had helped her pain, she refused

4    subsequent injections.  Id.

5          The ALJ did identify evidence in the record in support of her finding that Dolan prefers

6    conservative treatment options.  See, e.g., AR 350 ("She would like to try conservative

7    management first before we do anything more aggressive."); AR 428 (Dolan "has really taken an

8    alternative approach to pain control, trying to avoid medications, injections"); AR 704 ("currently

9    she doesn't want to try any additional medications").  But the ALJ's conclusion that Dolan's pain

10   is not as severe as it seems because she has refused treatment options such as Botox and cervical

11   epidural steroid injections, even though they had previously reduced her pain, is unsupported by

12   the record.  "[A]lthough a conservative course of treatment can undermine allegations of

13   debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the

14   claimant has a good reason for not seeking more aggressive treatment."  Carmickle v. Comm'r,

15   Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (citing Orn v. Astrue, 495 F.3d 625, 638

16   (9th Cir. 2007)).  Dolan's medical records indicate that the Botox injections were not repeated

17   because they made her symptoms worse, and the epidural was not repeated because she did not get

18   significant benefit from it.  AR 345, 355, 561.  Similarly, the record suggests that Dolan prefers to

19   avoid ongoing medications due to adverse side effects.  See, e.g., AR 345, 347, 355, 706.

20   Contrary to the ALJ's suggestion, the record does not demonstrate that Dolan inexplicably

21   rejected effective treatment options suggested by her physicians.  See AR 729 ("She has

22   demonstrated sincere desire to recover and rehabilitate and has followed through with all

23   treatments.").  Rather, they show that Dolan did not repeat procedures that had not provided relief.

24         The ALJ also relied on evidence suggesting that even Dolan's conservative treatment has

25   improved her symptoms.  AR 17.  In particular, the ALJ pointed to an eleven-month period in

26   2010 and 2011 in which Dolan did not see her orthopedist and "her pain had been well

27   controlled," and stated that "since March 2012, she has complained of only sporadic pain flares,

28   occurring approximately every three to four months."  AR 17.  But the records cited by the ALJ

actually state that Dolan had "been doing fairly well" in 2010 and 2011, not that her symptoms were "well controlled."  AR 347.  And while the records after March 2012 suggest that she often visited her orthopedist during a pain flare, they do not indicate that her other chronic symptoms had resolved or that she "complained of *only* sporadic pain flares."  See AR 704 ("Linda presents today for routine followup evaluation.  Despite all her conservative management an[d] exercise program she continues to have trouble maintaining scapular retraction and continues to get soreness. . . . [S]he continues to have multiple areas of muscle soreness over the cervical paraspinals, levators, upper trapezius, and through the rhomboids").

Defendant points to additional support in the record for the proposition that conservative treatment is effectively managing Dolan's symptoms.  ECF No. 11 at 8.  For example, Defendant notes that Dr. Andrews recommended only light physical therapy and anti-inflammatories in September 2008, AR 258; in August 2011, Dr. Barrows recommended treating Plaintiff with a mind-body method, AR 310; Plaintiff stated that ice and relaxation, as well as herbal remedies, helped the pain, AR 338, 715; and Dr. Barrows reported that Plaintiff's neck pain was much improved with trigger point injections, AR 720.  ECF No. 11 at 8.  But these facts and pages of the record were not referenced by the ALJ in her analysis discrediting Dolan's testimony.  "Defendant's post hoc suggestions for reasons to support the ALJ's credibility analysis do not alter that the ALJ was charged with specifically articulating [her] rationale in the first instance." Childress v. Colvin, No. 13-cv-03252-JSC, 2014 WL 6844829, at *3 (N.D. Cal. Dec. 4, 2014).

For these reasons, although conservative treatment is a permissible basis for rejecting a claimant's pain testimony, in this case the ALJ's explanation does not meet the "specific, clear and convincing reasons" threshold for discrediting Dolan.  See Garrison, 759 F.3d at 1014-15.

### 3.    Daily Activities

Daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis omitted).  But the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain,

United States District Court
Northern District of California

1    because impairments that would unquestionably preclude work and all the pressures of a

2    workplace environment will often be inconsistent with doing more than merely resting in bed all

3    day." Garrison, 759 F.3d at 1016; see also Smolen, 80 F.3d at 1284 n.7 ("The Social Security Act

4    does not require that claimants be utterly incapacitated to be eligible for benefits, and many home

5    activities may not be easily transferable to a work environment where it might be impossible to

6    rest periodically or take medication."). "The ALJ must make specific findings relating to the daily

7    activities and their transferability to conclude that a claimant's daily activities warrant an adverse

8    credibility determination." Orn, 495 F.3d at 639 (internal quotation marks and alterations

9    omitted). "Only if the level of activity were inconsistent with [the claimant's] claimed limitations

10   would these activities have any bearing on [her] credibility." Reddick v. Chater, 157 F.3d 715,

11   722 (9th Cir. 1998).

12            The ALJ noted that Dolan "is able to care for her personal needs, drive, go grocery

13   shopping, do some light chores around the house, and hike," and that she "does yoga and other

14   forms of exercise on a regular basis, attends a fulltime graduate school program for psychology,

15   and has apparently done some work with patients through that program." AR 17. But the ALJ did

16   not explain how these activities are inconsistent with Dolan's claimed limitations, which involve

17   difficulty keeping her neck in a straight position and sitting or standing for extended periods, as

18   well as frequent, but not constant, headaches and unpredictable symptom flares, which cause her

19   to cease all activities for up to a week at a time. Dolan's exercise program, including yoga, is part

20   of the treatment plan recommended by her doctors, and has sometimes exacerbated her symptoms.

21   See AR 440, 444, 554. As for her graduate school program, the ALJ acknowledged that Dolan

22   had "several accommodations in place" to allow her to attend, "including a note taker and a

23   provision allowing her to stand and walk as necessary during class. She has trouble looking down,

24   so she uses a stand when reading books." AR 15; see also AR 729 (Dolan's return to graduate

25   school "has demonstrated the functional limitations she faces (e.g., unable to take notes, carry

26   books etc.)"). Because the ALJ did not explain how Dolan's daily activities are inconsistent with

27   her testimony concerning her limitations, they are not a specific, clear, and convincing reason to

28   discredit that testimony. As the Ninth Circuit has explained, "disability claimants should not be

United States District Court
Northern District of California

10

1    penalized for attempting to lead normal lives in the face of their limitations." <u>Reddick</u>, 157 F.3d

2    at 722.

3            For these reasons, Dolan's motion for summary judgment on this issue is granted.  On

4    remand, the ALJ must reevaluate plaintiff's credibility.  If she rejects the claimant's testimony

5    about the severity of her symptoms, she shall provide "specific, clear and convincing reasons" to

6    explain her decision.  <u>Garrison</u>, 759 F.3d at 1014-15.

7            **B.      Evaluation of the Medical Opinion Evidence**

8            In reaching her residual functional capacity determination, the ALJ gave significant weight

9    to agency reviewing physicians Dr. Jone, Dr. Pong, and Dr. Holly, "[a]lthough none of these

10   doctors had the chance to examine the claimant," and gave little weight to the opinions of treating

11   and examining providers Dr. Pon, Dr. Kelly, Dr. Barrows, Dr. Murphy, Dr. Newkirk, and

12   occupational therapist Lynn Milgrom.  AR 19-20.  "As a general rule, more weight should be

13   given to the opinion of a treating source than to the opinion of doctors who do not treat the

14   claimant." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  To reject a treating doctor's

15   opinion, even if it is contradicted by another doctor, the ALJ must provide "specific and legitimate

16   reasons supported by substantial evidence in the record." <u>Reddick</u>, 157 F.3d at 725 (internal

17   quotation marks omitted).[2]  "This can be done by setting out a detailed and thorough summary of

18   the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

19   <u>Id.</u>  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations

20   and explain why they, rather than the doctors' are correct." <u>Id.</u>  "This is so because, even when

21   contradicted, a treating or examining physician's opinion is still owed deference and will often be

22   'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'"

23

24   _____

     [2]  When a treating source's opinions are not given controlling weight, ALJs must apply the factors
25   set forth in 20 C.F.R. § 404.1527(c)(2)(i-ii) and (c)(3-6) in determining how much weight to give
     each opinion.  These factors are: length of the treatment relationship and the frequency of
26   examination, § 404.1527(c)(2)(i); nature and extent of the treatment relationship,
     § 404.1527(c)(2)(ii); "supportability," § 404.1527(c)(3); consistency, § 404.1527(c)(4);
27   specialization, § 404.1527(c)(5); and other factors that tend to support or contradict the opinion,
     § 404.1527(c)(6). <u>See</u> <u>Garrison</u>, 759 F.3d 1012 n.11.
28

United States District Court
Northern District of California

1    Garrison, 759 F.3d at 1012 (quoting Orn, 495 F.3d at 633).

2         Dolan contends that the ALJ erred because she failed to provide specific and legitimate

3    reasons to reject the opinions of Dolan's treating physicians, and gave no reason to reject the

4    consultative opinion evidence.  ECF No. 10 at 21.

5                   **1.      Dr. Kelly**

6         The ALJ rejected the opinions of treating orthopedist Dr. Kelly because she found that they

7    were "largely inconsistent with the medical evidence for the reasons discussed above," apparently

8    referring to her earlier credibility analysis and her discussion of the opinions of Dr. Jone, Dr.

9    Pong, and Dr. Holly.  AR 19.  In particular, she found that "there is no evidence" that Dolan is

10   unable to move her upper body, or that she has a limited capacity for sustaining her head in

11   various positions, and that "no doctor has indicated that she appears to have difficulty"

12   maintaining one position or sustaining concentration during the work day.  Id.  Finally, she found

13   "there is no objective evidence demonstrating that the claimant has trouble attending work

14   regularly or performing work consistently over the course of an eight-hour day, and Dr. Kelly

15   offers no findings or explanation to support the restrictions she describes in these areas."  Id.

16        The ALJ's decision to accord little weight to the opinion of Dr. Kelly is not supported by

17   "specific and legitimate reasons supported by substantial evidence in the record."  Reddick, 157

18   F.3d at 725 (internal quotation marks omitted).  To the extent that the ALJ relied on her discussion

19   of the objective evidence in her credibility analysis, that discussion was problematic for the

20   reasons discussed above.  And the opinions of Dr. Jone, Dr. Pong, and Dr. Holly are not

21   themselves substantial evidence justifying the rejection of Dr. Holly's opinion because they did

22   not personally examine Dolan.  Lester, 81 F.3d at 831 ("The opinion of a nonexamining physician

23   cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either

24   an examining physician or a treating physician.").

25        In her discussion of the nonexamining physicians' opinions, the ALJ did note that "no

26   treating or examining clinician has ever observed [Dolan] to appear uncomfortable while seated,

27   suggesting that she can perform the sitting described by Dr. Jone, Dr. Pong, and Dr. Holly," (i.e.

28   about six hours) and that "[Dolan] retains full strength in all muscle groups, implying that she is

12

not more limited in these areas than those doctors have indicated." AR 18. But to the extent that the ALJ intended to incorporate these findings in her discussion of Dr. Kelly's opinions, she failed to explain why Dolan's apparent ability to sit comfortably during a doctor's appointment shows that she can sit comfortably for a period of six hours, or why a finding of full strength in all muscle groups undermines Dr. Kelly's lifting and carrying restrictions, which are premised on chronic pain, and not muscle weakness. <u>See</u> AR 681, 684. To meet the requirement to provide a specific and legitimate reason supported by substantial evidence, an ALJ must explain why her interpretations, rather than the doctors', are correct. <u>Garrison</u>, 759 F.3d at 1012. The ALJ did not do so here.

Finally, the ALJ's statements that "no evidence" supports Dr. Kelly's restrictions is belied by the record. <u>See</u>, <u>e.g.</u>, AR 678 (noting problems with "long-term sitting requiring neck flexion" and "particular difficulty with bending her head down during [] clerical tasks," and stating that "[s]ubjective complaints of pain were consistent with objective pain behaviors as she was observed to shift, stretch, massage and change positions frequently as needed"); 665 (Dolan must restrict sitting to thirty-minute segments no more than six times per day interspersed with walking or lying down); 450 (Dolan "could not sit at a desk, because of her neck, and away from a desk, she has significant limitations of strength of her arms. . . . Her greatest frustration is that she may have some good days, and then have a major flare, without any apparent precipitant, that takes her out of activities for extended periods of time."); 729 (Dolan cannot "engage in full time work that would require repetitive use of her arms").

Defendant points to evidence in the record suggesting that Dolan may have normal muscular strength and capabilities, and that her limitations may not be as severe as Dr. Kelly states. ECF No. 11 at 2-4 (citing AR 258, 263, 270-71, 273, 310, 345, 347, 349, 354, 377, 379-80, 447, 527-28565, 568-69, 572, 671-73, 675-77, 717). These portions of the record might support a determination that Dolan is not disabled. But the ALJ did not reference this evidence or even find that the weight of the medical evidence contradicted Dr. Kelly's opinions as to upper body movement, head position, maintaining one position, or regular work attendance. Instead, she stated that *no* evidence supported these restrictions. To the extent that this assertion is a specific

United States District Court
Northern District of California

1    and legitimate reason to discredit Dr. Kelly's opinion, it is not supported by substantial evidence

2    in the record.

3          Defendant also argues that the ALJ properly rejected Dr. Kelly's opinion because it was a

4    "checklist" opinion that did not include findings or explanations to support the severe restrictions

5    it describes.  ECF No. 11 at 4 (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195

6    (9th Cir. 2004)).  But the "checklist" form Dr. Kelly completed, AR 681-85, "did not stand alone;"

7    it reflected the extensive treatment notes that Dr. Kelly created in the course of her relationship

8    with Dolan.  See Garrison, 759 F.3d at 1014 n. 17; see AR 345-417, 428-33, 681-85, 698-709.

9                    **2.    Dr. Murphy**

10          The ALJ gave little weight to the opinion of Dr. Murphy, Dolan's primary care physician.

11   AR 19-20.  She described his opinions in detail, and then stated that these "opinions are not

12   consistent with the medical evidence for the reasons set forth above."  AR 20.  She offered no

13   further explanation of her reasons for rejecting Dr. Murphy's opinions, and, as discussed above,

14   her prior discussions of the objective medical evidence also do not provide a specific and

15   legitimate reason supported by substantial evidence to reject his opinions.  The Commissioner

16   points to Dr. Murphy's statement in March 2008 that Dolan's prognosis to return to work was

17   "excellent," ECF No. 11 at 6; AR 636, but this potential inconsistency was not identified by the

18   ALJ.  See Garrison, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted

19   by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate

20   reasons that are supported by substantial evidence."); see also Regennitter v. Comm'r of Soc. Sec.

21   Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) ("To say that medical opinions are not supported by

22   sufficient objective findings or are contrary to the preponderant conclusions mandated by the

23   objective findings does not achieve the level of specificity our prior cases have required").

24                    **3.    Dr. Barrows**

25          The ALJ gave little weight to the opinion of Dr. Barrows, Dolan's pain management

26   physician, who concluded that Dolan cannot return to her past work or engage in full time work

27   that requires repetitive use of the arms and hands, and noted that she has particular difficulty

28   keyboarding.  AR 19, 729.  She found that "his opinion is not consistent with the medical evidence

United States District Court
Northern District of California

14

United States District Court
Northern District of California

for the reasons previously explained," and that it "is vague and fails to explain the extent to which the claimant remains able to use her arms and hands in a work setting." AR 19. Finally, the ALJ noted that "whether an individual is capable of returning to her past work or performing other work that exists in the economy are issues that are reserved to the Commissioner." Id.

An ALJ should not give any special significance to the source of an opinion on issues reserved to the Commissioner, which include whether a claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d). Thus the ALJ was not required to give any special weight to Dr. Barrows' statement that Dolan could not return to her past work. But the ALJ provided no specific and legitimate reason to reject Dr. Barrows' medical opinions. AR 729. See Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) (while the fact that a physician also expressed opinions regarding the claimant's ultimate disability and residual functional capacity "may be a specific reason to reject a treating physician's medical opinion, it is not a legitimate one"). For the reasons discussed above, the ALJ's statement that Dr. Barrows' opinion was inconsistent with the medical evidence is insufficiently specific. And Dr. Barrows' failure "to explain the extent to which the claimant remains able to use her arms and hands in a work setting" is not a legitimate reason to reject his findings. Neither the ALJ nor the Commissioner points to any requirement that a treating physician must describe what his patient can do, rather than what she cannot do, in order for his opinion to be credited.[3] See 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); Mclean v. Colvin, No. 14-cv-05036-DFM, 2015 WL 3441905, at *2 (C.D. Cal. May

---

[3] Dolan suggests that if the ALJ had a question about Dr. Barrows' opinion, she had a duty to conduct an appropriate further inquiry. ECF No. 10 at 23. But an "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Dr. Barrows' opinion is not particularly detailed, but it is not ambiguous, and the ALJ did not find that the record was inadequate to allow for a proper evaluation of the evidence. See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous.").

1    28, 2015) (the absence of a discussion of functional limitations in physician's notes does not

2    absolve the ALJ of addressing findings regarding the nature and severity of the claimant's

3    impairment, including her symptoms, diagnosis, and prognosis).

### 4.    Dr. Newkirk

5            The ALJ gave little weight to the opinion of examining physician Dr. Newkirk because she

6    found that it was "also inconsistent with the medical evidence for reasons previously explained."

7    AR 20.  "[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if

8    contradicted by another doctor, can only be rejected for specific and legitimate reasons that are

9    supported by substantial evidence in the record."  Lester, 81 F.3d at 830-31.  As explained above

10   with respect to the ALJ's rejection of Dr. Murphy's opinions, the statement that Dr. Newkirk's

11   opinion is "inconsistent with the medical evidence for reasons previously explained," standing

12   alone, is inadequate to provide a specific and legitimate reason to discredit Dr. Newkirk's

13   findings.  Defendant's argument that Dr. Newkirk's opinion improperly addresses an issue

14   reserved for the Commissioner, ECF No. 11 at 6, is irrelevant because it is not a reason articulated

15   by the ALJ.

### 5.    Lynn Milgrom

17           Although the ALJ correctly determined that Lynn Milgrom, an occupational therapist who

18   performed a functional capacity evaluation of Dolan in November 2009, was not an acceptable

19   medical source, she nevertheless considered Milgrom's opinion.  AR 20.  See 20 C.F.R.

20   § 404.1513(a).  She accorded it little weight, however, because she concluded that it was "vague

21   and fail[ed] to explain what the claimant remains able to do despite her impairments."  Id.

22           Dolan argues that Milgrom's opinion was not vague, and that the ALJ failed to provide

23   specific and legitimate reasons for rejecting it.[4]  ECF No. 10 at 24.  To discount the opinion of an

24   "other source" under 20 C.F.R. § 404.1513(d), the ALJ need only give "reasons germane to each

25   witness," not specific and legitimate reasons supported by substantial evidence.  Molina v. Astrue,

26   _____

27   [4] Dolan also argues that the ALJ had a duty to conduct an appropriate inquiry, such as submitting
     further questions to Milgrom.  But Milgrom's opinion is not ambiguous and, as discussed above,
28   the ALJ did not conclude that the record was inadequate to allow for proper evaluation of the
     evidence.  See Mayes, 276 F.3d at 459-60; Webb, 433 F.3d at 687.

United States District Court
Northern District of California

674 F.3d 1104, 1111 (9th Cir. 2012).  But the ALJ's statement that the opinion is "vague" and "fails to explain what Dolan remains able to do" does not satisfy even this standard.  Milgrom's seventeen-page report, AR 663-79, describes her assessment of the claimant in detail, and it is not clear why the absence of a list of tasks the claimant is able to perform undermines the usefulness or credibility of Milgrom's explanation of her limitations.

Plaintiff's motion for summary judgment on this issue is granted.  On remand, the ALJ shall reevaluate the opinions of the treating and examining providers and, if she rejects those opinions, shall provide appropriate reasons in support of her decision.

### C.   Lay Witness Testimony

An ALJ can reject testimony by a lay witness about a claimant's impairments "only by giving specific reasons germane to each witness."  Regennitter, 166 F.3d at 1298.  With respect to the testimony of lay witness Geoffrey Wyshak, the ALJ stated only, "His statements generally echo those of the claimant, and the undersigned finds them unpersuasive for the same reasons." AR 18.  The Commissioner argues that the ALJ fulfilled her obligation to provide germane reasons to reject Wyshak's testimony "by stating that they were repetitive of Plaintiff's own testimony" and referring to her earlier credibility determination.  ECF No. 11 at 9.  But the ALJ's flawed credibility analysis of Dolan is not a germane reason to reject Wyshak's testimony.  See Schow v. Astrue, 272 Fed. App'x 647, 653 (9th Cir. 2008) (erroneous credibility finding regarding claimant provided "a problematic foundation" for rejection of the observations of the claimant's mother and friend); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (cautioning against characterization of witnesses' observations as mere repetition of the claimant's self-reporting).  Accordingly, Plaintiff's motion for summary judgment on this issue is granted.

### D.   Vocational Expert

Dolan also challenges the ALJ's reliance on the testimony of vocational expert Kenneth Ferra.  ECF No. 10 at 25.  An ALJ may rely on a vocational expert's testimony based on a hypothetical that contains all of the limitations that the ALJ found credible and supported by substantial evidence in the record.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  But where the ALJ's residual functional capacity determination is flawed because the ALJ improperly

United States District Court
Northern District of California

discounted medical evidence and the claimant's testimony, reliance on the vocational expert's opinion that an individual with that residual functional capacity could perform certain work is error.  Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014).  Plaintiff's motion for summary judgment on this issue is also granted.

### E.      Substantial Evidence

Finally, Dolan argues that the ALJ's residual functional capacity analysis is not supported by substantial evidence.  ECF No. 10 at 26.  Where an ALJ does not provide clear and convincing reasons to exclude the claimant's statements regarding her pain and symptoms from her assessment of the claimant's residual functional capacity, substantial evidence does not support that assessment.  Lingenfelter v. Astrue, 504 F.3d 1028, 1040-41 (9th Cir. 2007); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's [residual functional capacity], . . . [c]areful consideration [must] be given to any evidence about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone." (internal quotation marks omitted)); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (because the ALJ did not set forth reasons as to why he chose to discount lay testimony, his conclusion that claimant could do his previous work was not supported by substantial evidence).  Plaintiff's motion for summary judgment on this issue is granted.

### F.      Remand

Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).  Dolan argues that in light of the ALJ's errors in this case, the Court should nevertheless remand the case to the agency for an award of benefits.  ECF No. 10 at 26-27.

The Ninth Circuit applies "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits." Garrison, 759 F.3d at 1020.  This standard is met where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Id. But if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court should remand for further proceedings "even though all conditions of the credit-as-true rule are satisfied." Id. at 1021; see also Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1106 ("a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony").

Here, the Court need not determine whether the three preliminary requirements are met, because, even assuming that they are, the record as a whole creates serious doubt as to whether the claimant is disabled. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014). Specifically, there is conflicting medical evidence regarding the claimant's capabilities and some indication that her pain can be effectively managed with conservative treatment. See, e.g., AR 80 (Dr. Jone, concluding that Dolan can sit for about six hours in an eight-hour work day, and noting that she is "improving"); AR 90 (Dr. Pong, finding Dolan partially credible because despite a long and consistent history of treatment for pain and muscle tension, she is neurovascularly intact); AR 258 (Dr. Andrews, stating that Dolan is "[d]oing well," and recommending light physical therapy and anti-inflammatories); AR 338 (Dolan, stating that ice and relaxation sometimes makes her pain better); AR 347 (Dr. Kelly, stating that Dolan had "been doing fairly well over the past couple of years until recently," and noting that "[c]urrently symptoms are improving"); AR 573 (Dr. Pon, finding that Dolan should be able to sit for a total of six hours during an eight-hour work day); AR 684-85 (Dr. Kelly, stating that Dolan can sit for about four hours in an eight-hour working day, but must walk for five minutes every twenty to thirty minutes; and that she has no significant limitations with reaching, handling, or fingering); AR 690 (Dr. Murphy, stating that Dolan can sit for less than two hours and stand and walk for less than two hours in an eight-hour day, and that she must walk for fifteen minutes every thirty minutes); AR 715 (Dr. Murphy, reporting that Dolan stated that herbal remedies help; and stating that Dolan drove her daughter to San Diego, although her neck and arms were worse than usual afterwards); AR 720 (Dr. Barrows, stating that Dolan's neck pain was much improved, albeit temporarily, with trigger point injections, and that

United States District Court
Northern District of California

1   she was counseled on the use of mindfulness to address her upper extremity pain because of the

2   influence of stress on this problem).

3        Where, viewing the record as a whole, the Court concludes that the claimant may be

4   disabled, but the record also contains cause for serious doubt, the proper result is to remand to the

5   ALJ for further proceedings on an open record.  <u>Burrell</u>, 775 F.3d at 1141-42.

6                                  **CONCLUSION**

7        For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and

8   Defendant's cross-motion for summary judgment is denied.  The action is hereby remanded to the

9   ALJ for further proceedings consistent with this order.

10       IT IS SO ORDERED.

11   Dated:  July 27, 2015

12

13   _____

14                    JON S. TIGAR
                 United States District Judge

United States District Court
Northern District of California